NICOMEDES VALCÁRCEL, ETC., Plaintiff and Appellant, v. FELI-
CIANO HERMANOS ET AL., Defendants and Appellees.

No. 6747. Argued January 14, 1936.—Decided March 25, 1936.

*Eduardo Urrutia Martorell* for appellant. *R. Castro Fernández* for
appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

This is an action for damages brought by a father for
the injuries caused to his minor son on May 19, 1933, by the
defendant firm, Feliciano Hermanos, with a wagon belonging
to said firm used in their ice business, the defendant's in-
surance company, The United States Casualty Co., being also
responsible for the damages.

The plaintiff maintained and still maintains that as a con-
sequence of the accident, the minor suffered several injuries,
among which is the fracture of the middle third of the shaft
of the left femur; that he had to undergo a very painful
operation and a long and annoying treatment, as a result of
which he lost the use of the leg and that the accident was due
to the negligence of the driver of the wagon of the defendant
partnership in driving on his left at high speed along Ernesto
Cerra Street, in Santurce, without looking ahead, or giving
warning when approaching the corner of Lucchetti Street,
without using the brakes or swerving the vehicle upon facing
the boy riding on his bicycle.

The defendant firm, Feliciano Hermanos, denied that its employee was negligent, and alleged as a first special defense exclusive negligence on the part of the minor and of the plaintiff his father, and as a second defense the contributory negligence of the father and of his minor son.

The case went to trial and the court held, that the evidence failed to show "that any of the negligent acts alleged by the defendant were the cause of the injuries," and therefore the same was insufficient to sustain the complaint, which was dismissed without special imposition of costs.

The plaintiff took an appeal and assigned and discussed at length in his brief two errors which it claims were committed by the trial court in weighing the evidence and in admitting in evidence certain affidavits.

We have carefully examined the evidence submitted by both sides. Essentially, and using as much as possible the witnesses' own words, it is as follows:

Plaintiff Nicomedes Valcárcel, testified that he was the father of the injured minor Ramón, a child ten years old.

Guadalupe García said that the boy "was riding a small bicycle and the chauffeur of the Feliciano firm was driving the wagon along Cerra Street and . . . . he failed to blow the horn and the child was approaching the corner, the wagon then without blowing the horn and while avoiding the holes on the road, swerved to the wrong side of it . . . and struck the bicycle with the bumper and the boy was thrown down between the front and rear wheels of the wagon, on the left, knocking him with the right fender . . . The wagon stopped instantaneously . . . It was not coming fast."

Ana Guzmán saw "the boy on the bicycle crossing up Lucchetti Street and the wagon crossing Cerra Street and when the boy was about to cross, the wagon struck the bicycle with the front left mudguard; and the boy fell. The wagon failed to sound the horn."

Tomás Cristiano testified "that a boy was passing on a small bicycle, and then the ice wagon came up and struck the

boy with the left mudguard, and the boy fell underneath the wagon together with the bicycle . . . lying on the ground . . . I heard a claxon when I stepped into the street. I do not know whether it was the wagon or some other car . . . The boy was zig-zagging. He hardly reached the pedals. He was riding along the middle of the street. The wagon emerged while he was crossing the street. The wagon stopped instantaneously.''

Pedro Jorge described the accident as follows: ''I saw Mr. Valcárcel coming on a bicycle . . . and on getting to the corner I heard the crash, I saw that the wagon, 'bang,' struck him, the bicycle falling like this close to the wagon, the left wheel running over the child, who lay down between the front and rear wheels.'' The wagon ''was coming fast, about twenty or twenty-five miles per hour.''

The injured child was then called to the stand. He testified: ''I was coming by the Lucchetti Street in a bicycle, and when getting to the corner Feliciano's wagon was coming up and struck my bicycle with the bumper and its left wheel ran over my leg. I heard no horn at all. It happened suddenly. On the left side of the street. Near the sidewalk. I was laid up in hospital for forty-two days. They splinted my leg and they placed some sand bags to distend it as the ends of the bone did not fit.'' He suffered greatly. He missed his parents. He did not go back to school and was not promoted. The bicycle was not his. It was lent to him by a boy whose name and address he did not know. He had ridden on a bicycle before. He was looking ''ahead.'' The truck struck him with the left mudguard.

Claudina Aquerón, teacher of the boy, said that he would have been promoted from the second grade, which he was studying, that he was normal. With his school record in her hands she declared that he had nineteen ''F's'' which meant a failure. She insisted in that he was normal.

Juan Feliciano, manager of the defendant firm, testified on his insurance with the other defendant. The insurance policy was introduced in evidence.

Finally, doctor Arsenio Comas, the physician who assisted the injured child, stated that the latter "had the middle third of the left femur fractured, a simple fracture." He examined an X-ray plate taken when he had been a month in the hospital, which shows a union but also that the bone is not straight. The leg became three-fourth of an inch shorter than the other. In time he will be able to walk without crutches. The fracture might have been produced by the wheel of the truck running over the leg. Also by the bicycle when crushed by the truck.

The evidence for the defendant began with the testimony of the attorney and notary Juan José Fuertes who authenticated the affidavits of Ana Guzmán and Tomás Cristiano in the preliminary investigation of the event made by the defendant insurance company. He explained how they were prepared: taken in shorthand, transcribed and typewritten, handed over for the witnesses to read, or read by him to the witnesses who then signed in his presence.

While witnesses Guzmán and Cristiano, produced by the plaintiff, were testifying at the trial, the defendant produced the affidavits for them to read and to explain certain contradictions between the same and their oral statements. Witness Guzmán said that she signed the paper without having the same first handed to her to read and that what she had declared at the trial was the truth, and Cristiano stated more or less the same.

Whereupon the defendant said, "I introduce these affidavits in evidence solely in order to impeach the testimony of witnesses Ana Guzmán and Tomás Cristiano." The plaintiff objected and the court admitted in evidence the affidavits "for the said purpose only."

The chauffeur Rafael Santiago Cosme was called to the stand. He testified that he "was taking an ice delivery wagon

in its return trip to a garage in Ernesto Cerra Street towards Talleres and a child appeared to cross from Lucchetti towards Cerra Street ahead of him." He was driving neither very fast nor very slowly as there were many holes. He slowed down on getting to the corner and before reaching there he sounded his horn. "In the street there was hardly room for two automobiles. Ernesto Cerra Street is where the traffic is heaviest. The traffic through Lucchetti Street is light. I was driving so that the left wheel was keeping to the middle of the street. On reaching the corner a child happened to be coming up on a bicycle and when I got a glimpse of him I tried to stop which I did, but I always struck the bicycle the rear wheel of which was caught by the wheel of the wagon, but the child was not caught underneath. The child was underneath the bicycle. They lifted the bicycle a little and pulled him out. The bicycle remained under the wagon just as it was."

Evaristo Velázquez said, "While we were in conversation a child came up on a bicycle . . . he hardly reached the pedals and was zig-zagging, a horn was sounded and upon hearing it we saw the wagon emerging and right there he was caught between its front wheel and the rear wheel of the bicycle, and we ran, and the child's leg was broken." The delivery wagon "stopped instantaneously . . . right in the middle of the street . . . was driving slowly . . . the traffic in Ernesto Cerra Street is the heaviest . . . The wagon did not run over the leg of the child."

Juan Hernández stated, "I was looking in the direction of the protestant church in front and then I heard a horn, I did this, and saw it, the wagon was coming then towards Lucchetti Street . . . and the child was coming . . . When the chauffeur drove up and was about two meters past the corner the child came in zig-zagging on a bicycle and got under the wagon and the wheel of the bicycle was caught under the wagon and the boy under the bicycle. . . The wagon was

moving as fast as a man can walk, its left wheel keeping to the middle of the street."

Basilio Rodríguez testified: "Somebody was coming up on a bicycle zig-zagging and when approaching the corner we heard a horn and just then they met and collided and we saw the boy on the ground under the bicycle and we ran up there. The wagon stood almost at the middle of the street on its right side . . . it was coming slowly, there are a lot of holes, had not gone far across the street. It was just starting across."

Finally Dr. W. F. Lippitt, physician and surgeon who has practiced his profession for 45 years, testified. He examined the child shortly before the trial. He also examined the X-ray plate to which Dr. Comas referred. He was of opinion that the child ought not to have started walking as soon as he did. However, the bone is well united. He does not think that the truck could possibly have run over the leg without causing a comminuted fracture of the bone. The fracture might have been caused by the pressure of the bicycle, in turn pushed by the truck.

On rebuttal Dr. Comas testified that he discharged the child because he considered the boy cured. He does not know what he did after leaving the hospital.

Such being the evidence submitted by the parties, it can not possibly be maintained that it was weighed erroneously by the trial court in rendering its judgment for the defendant. We will not stop to consider the statements of the court in its opinion. Some of such statements might be mistaken and yet might not be ground for reversal. What really matters is the final conclusion which reveals the final determination by the court.

The trial court did not commit error either in admitting in evidence the two affidavits in question for the sole purpose of impeaching the testimony of the said witnesses.

Section 159 of the Law of Evidence, Session Laws of 1905, p. 157, reads as follows:

"A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

Here, as we have seen, the legal requisites were complied with. See *Vélez* v. *Iturregui,* 44 P.R.R. 471.

The judgment appealed from must be affirmed.

Mr. Justice Travieso took no part in the decision of this case.